UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MEDCOR, INC., and MEDCOR SAFETY, LLC, | ) ) ) | |
| Plaintiffs, | ) ) | No. 1:23-CV-02109 |
| v. | ) ) ) | Judge Edmond E. Chang |
| PAUL KEVIN KELLEY and MOBILE MEDICAL CORPORATION, | ) ) ) ) | |
| Defendants. | ) ) | |
| PAUL KEVIN KELLEY, | ) ) | |
| Counter-Plaintiff, | ) ) ) | |
| v. | ) ) ) | |
| MEDCOR, INC, | ) ) | |
| Counter-Defendant. | ) ) ) ) ) | |
| PAUL KEVIN KELLEY, | ) ) | |
| Plaintiff, | ) ) ) | No. 1:24-CV-04738 |
| v. | ) ) ) | |
| MEDCOR, INC, and MEDCOR SAFETY, LLC, | ) ) ) ) | |
| Defendants. | ) ) ) ) | |

MEMORANDUM OPINION AND ORDER

Before the Court are two connected motions in related cases presenting a civil-procedure puzzle. In a lawsuit filed in 2023, Medcor sued its former employee, Paul Kelley, for alleged trade-secrets misappropriation. R1. 1, 2023 Original Compl.; R.1 58, 2023 Amended Compl.[1] In that case, at the Court's eventual direction, R1. 107, 08/21/2024 Order, Kelley moved to amend his counterclaims to add an age-discrimination claim against Medcor. R1. 111, Kelley Mot. to Amend. In 2024, Kelley separately sued Medcor for alleged age discrimination. R2. 1, 2024 Compl. In the 2024 case, Medcor moves to dismiss the complaint because Kelley failed to bring the age claim as a compulsory counterclaim in the 2023 case. R2. 10, Medcor Mot. to Dismiss.[2] On review of the briefing in both cases, the Court concludes that Kelley's age-discrimination claim should have been filed along with the counterclaims he asserted in

---

[1] Citations to the record in *Medcor, Inc. v. Kelley*, No. 1:23-cv-02109 (N.D. Ill. Apr. 4, 2023) (the 2023 Case) are "R1." followed by the docket entry number and, if needed, a page or paragraph number. Citations to the record in *Kelley v. Medcor, Inc.*, No. 1:24-cv-04738 (N.D. Ill. June 7, 2024) (the 2024 Case) are "R2." followed by the docket entry number and, if needed, a page or paragraph number.

[2] This Court has subject matter jurisdiction over the 2023 Case both under federal-question jurisdiction, 28 U.S.C. § 1331, and under diversity jurisdiction, 28 U.S.C. § 1332(a). For diversity jurisdiction, Medcor is an Illinois corporation with its principal place of business in Illinois. 2023 Amended Compl. ¶ 18. Medcor Safety, LLC, which was previously named Worldwide Safety Professionals LLC, *see* R1. 76, Mot. to Substitute; R1. 77, is Medcor's direct subsidiary and is a single-member LLC with its sole member being Medcor. *Id.* ¶ 19. Medcor Safety is an Ohio limited liability corporation with its principal place of business in Ohio. *Id.* Kelley is a citizen of West Virginia, and Mobile Medical Corporation (also known as Encore Safety Group) is a Pennsylvania corporation with its principal place of business in Pennsylvania. *Id.* ¶¶ 20–21. Complete diversity therefore exists. The amount in controversy exceeds $75,000. *Id.* ¶ 21. The Court also has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367(a). This Court has subject matter jurisdiction over the 2024 case under 28 U.S.C. § 1331.

2023, not because the claim itself is a compulsory counterclaim, but because separating the ADEA claim from the counterclaims violated the rule against claim splitting. For the reasons explained in this Opinion, Medcor's motion to dismiss the 2024 age-discrimination case is granted, and Kelley's motion to amend the counterclaims in the 2023 case is denied.

## I. Background

### A. Facts

For over 16 years, Paul Kelley held several managerial positions as an onsite workplace healthcare provider at Medcor, specifically in its Construction Health & Safety Division. R1. 2023 Amended Compl. ¶¶ 2–3, 27, 45. During his tenure at the company, Kelley allegedly had access to confidential and trade-secret information about Medcor's customers, suppliers, programs, rates, strategies, and contracts. *Id.* ¶¶ 4, 46–47. Because he was given access to sensitive information, Medcor required Kelley to sign a Non-Compete Agreement at the beginning of his employment, in which Kelley agreed to certain confidentiality and trade-secret obligations and to limits on future employment. *Id.* ¶¶ 4, 48–52.

Kelley parted ways with Medcor in 2023. R1. 2023 Amended Compl. ¶¶ 5, 53. Though the company alleges that Kelley's position was eliminated in 2023, *id.* ¶ 5, Kelley claims that the company fired him, and then hired a less-experienced replacement 20 years Kelley's junior, R2. 2024 Compl. ¶ 25. Kelley also complains that after his employment was terminated, Medcor wrongfully withheld the executive bonus

3

that he had earned after meeting 2022 performance goals, which Kelley views as part of a pattern of discrimination against older employees. R2. 2024 Compl. ¶¶ 16–19.

Kelley quickly found a new position with Encore Safety Group (also known as Mobile Medical Corporation), a competitor of Medcor's in the onsite occupational healthcare market. R1. 2023 Amended Compl. ¶ 5. At the time, Encore Safety did not have a construction safety unit, but Kelley allegedly was brought on to help establish that service. *Id.* ¶¶ 55–58. In March 2023, Medcor learned that Kelley was speaking with one of Medcor's largest clients and that the company had engaged Encore Safety to take over two positions that Medcor had previously provided for the client. *Id.* ¶ 56. On the same day, Kelley allegedly reached out to a Medcor employee to offer him a job with Encore Safety. *Id.* ¶ 57. Medcor asserts that Kelley's role with Encore Safety placed him in a position to reveal Medcor's confidential and trade-secret information, and further alleges that Kelley in fact revealed that information and violated the Non-Compete Agreement. *Id.* ¶¶ 77–82.

### B. Procedural Posture

One month later, in early April 2023, Medcor sued Kelley for breach of contract and for Illinois and federal trade-secret misappropriation. R1. 2023 Original Compl. On April 27, 2023, Kelley responded with counterclaims against Medcor, alleging breaches of oral and written contracts, unjust enrichment, and a violation of the Illinois Wage Payment and Collections Act, 820 ILCS 115/1. R1. 12, Kelley Counterclaims ¶¶ 27–57. He sought earned income from his bonus, plus interest. *Id.* at 8. In

4

the counterclaims, Kelley alleged (among other things) that he had been demoted to "replace him with a younger individual with zero experience," and that Medcor chose to "go younger." *Id.* ¶¶ 10–12. Despite leveling that allegation of age discrimination, Kelley did not explicitly bring an age-discrimination counterclaim. *See* R1. 12, Kelley Counterclaims. The case proceeded to fact discovery, and the magistrate judge set a fact-discovery deadline of May 24, 2024. R1. 52, 01/09/2024 Order. The magistrate judge later extended fact discovery by two weeks, ending on June 12, 2024. R1. 90, 05/30/2024 Order.

On June 7, 2024, Kelley filed a lawsuit against Medcor, alleging that Medcor discriminated against him because of his age, in violation of the Age Discrimination in Employment Act (commonly cited as the ADEA). 29 U.S.C. § 623. He sought damages in an amount greater or equal to the amount of past and future lost compensation, lost bonus amounts, and lost benefits and for emotional distress. R2. 2024 Compl. Medcor moved to dismiss the 2024 case, arguing that Kelley failed to bring his ADEA claim as a compulsory counterclaim in the 2023 case. R2. 11, Medcor Br. at 3 (citing Fed. R. Civ. P. 12(b)(6), 13(a)). Medcor also argued that, even if the ADEA claim were not a compulsory counterclaim, the 2024 case should be dismissed because Kelley improperly split his wrongful-termination claims across two separate lawsuits, violating the rule against claim splitting. R2. Medcor Br. at 3–4.

In August 2024, this Court entered an order on the dockets of both cases asking the parties whether Kelley's 2024 ADEA claim is indeed a compulsory counterclaim

5

to the 2023 action, and, if it is not, giving Kelley the chance to seek leave to amend his counterclaims with the ADEA claim. R1. 08/21/2024 Order. After reviewing the parties' responses, the Court has determined that the ADEA claim is not a compulsory counterclaim to the 2023 case, but because Kelley filed the claim in a separate action than his counterclaims, the ADEA claim must be dismissed for violating the rule against claim splitting.

## II. Legal Standard

On Medcor's motion to dismiss, under Federal Rule of Civil Procedure 8(a)(2), a complaint generally need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This short and plain statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned up).[3] The Seventh Circuit has explained that this rule "reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)).

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Ord. of Police*

---

[3]This Opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

6

*of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "[A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678–79. Having said all this, a motion asserting that a claim has been improperly split is better treated as a Civil Rule 12(c) motion for judgment on the pleadings. Claim-splitting is not really a failure to adequately state a claim on the merits, but rather in the nature of an affirmative defense, similar to "res judicata" (or claim preclusion), Fed. R. Civ. P. 8(c)(1).

On Kelley's motion to amend, after a party has amended its pleadings once as a matter of right, district courts "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). But leave to amend is not granted automatically. *See Airborne Beepers & Video, Inc. v. AT&T Mobility LLC*, 499 F.3d 663, 666 (7th Cir. 2007). Indeed, "[d]istrict courts have broad discretion to deny leave to amend where there is undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies, undue prejudice to the defendants, or where the amendment would be futile." *Johnson v. Cypress Hill*, 641 F.3d 867, 871–72 (7th Cir. 2011) (cleaned up); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962). And while delay alone usually does not warrant

denying leave to amend, "the longer the delay, the greater the presumption against granting leave to amend." *Johnson*, 641 F.3d at 872 (cleaned up).

## III. Analysis

### A. Compulsory Counterclaim

The first question is whether Kelley's 2024 ADEA claim should have been brought as a compulsory counterclaim in the 2023 case. In the 2024 case, Medcor first argues that the age claim was a compulsory counterclaim in the 2023 case because the facts underlying the age claim "arise[] out of the same transaction or occurrence as the [2023 Case] and the Kelley Counterclaims." R2. Medcor Br. at 6. Medcor highlights the overlap between the facts underlying Kelley's 2023 counterclaims and the 2024 ADEA lawsuit, including the circumstances of his termination, the hiring of a younger, less-experienced executive, and Medcor's refusal to pay Kelley's bonus. *Id.* at 3. Medcor also points out that Kelley essentially requests the same relief in his counterclaim and in the 2024 Case, too. *Id.* at 6.

In response to the motion to dismiss, Kelley contends that his ADEA claim was not a compulsory counterclaim in the 2023 case because he had not received a Right to Sue Notice from the EEOC, nor had the 60-day waiting period relating to EEOC complaints passed when he filed his counterclaims, so he did not have an actionable ADEA claim when he filed his counterclaims. R2. 14, Kelley Resp. to Medcor Mot. to Dismiss at 3. Because the claim had not accrued, it could not be a compulsory

8

counterclaim. And he reasserts this position in his motion to amend the counterclaims. R1. Kelley Mot. to Amend at 2–4.

Counterclaims are governed by Federal Rule of Civil Procedure 13. Civil Rule 13(a) requires a party defending against a case to bring as a compulsory counterclaim "any claim that—at the time of its service—the pleader has against an opposing party if the claim arises out of the transaction or occurrence that is the subject matter of the opposing party's claim …." Fed. R. Civ. P. 13(a). If a compulsory counterclaim is not brought in the original action, then the counter-plaintiff is barred from bringing that claim later. *Baker v. Gold Seal Liquors, Inc.*, 417 U.S. 467, 469 n.1 (1974). The purpose of Civil Rule 13(a) is to promote efficiency and judicial economy by encouraging "the simultaneous and final resolution of all claims which arise from a common factual background." *Car Carriers, Inc., v. Ford Motor Co.*, 789 F.2d 589, 594 n.7 (7th Cir. 1986); *Martino v. McDonald's Sys., Inc.*, 598 F.2d 1079, 1082 (7th Cir.). "[A] court will generally either stay its own proceedings or dismiss an action once it learns that the action before it involves a claim that is properly characterized as a compulsory counterclaim in another pending federal action." *Inforizons, Inc. v. VED Software Servs. Inc.*, 204 F.R.D. 116, 118 (N.D. Ill. 2001).

It is well established in this circuit that a defendant's counterclaim is compulsory when it is "logical[ly] relat[ed]" to the lawsuit initiated by the plaintiff. *See Colonial Penn Life Ins. Co. v. Hallmark Ins. Adm'rs, Inc.*, 31 F.3d 445, 448 (7th Cir. 1994). There is no rigid formula, so courts consider "the totality of the claims,

9

including the nature of the claims, the legal basis for recovery, the law involved, and the respective factual background." *Inforizons, Inc.*, 204 F.R.D. at 119. Even if a counterclaim "arises" out of the same "transaction" as the plaintiff's claims, Fed. R. Civ. P. 13(a), the counterclaim will not be dismissed in a later action "if it ha[d] not matured when the party serve[d] his answer." *Burlington N. R.R. Co. v. Strong*, 907 F.2d 707, 712 (7th Cir. 1990) (citing 6 WRIGHT & MILLER'S FEDERAL PRACTICE & PROCEDURE § 1411 (2d ed. 1990)).

Applying those principles here, Kelley's ADEA claim is not a compulsory counterclaim because it is not logically related to Medcor's *trade-secrets* case against Kelley. Remember that Medcor's trade-secrets allegations against Kelley arise out of his employment with competitor Encore Safety. In that case, Medcor alleges that when Kelley left the company, he went to work for a competitor, Encore Safety. R1. 2023 Amended Compl. ¶¶ 53, 56–57. Kelley then reached out to two other Medcor employees jobs with Encore too. *Id.* ¶¶ 57–58. Kelley, based on his prior background and experience, was integral in building the Mobile Medical Services group at Encore and even solicited former clients to move to Encore with him. *Id.* ¶¶ 61–63. Medcor alleges that these actions breached Kelley's Non-Compete Agreements with Medcor. *Id.* ¶ 1. Medcor's complaint mentions only in passing that Kelley's "position was eliminated" and that his "employment with Medcor ended." *Id.* ¶ 5, 53. In contrast, the age-discrimination claim of course focuses on the circumstances leading up to the termination of Kelley's employment. R2. 2024 Compl. ¶¶ 12–29. So the trade-secrets case

10

targets transactions and occurrences that are different from those involved in the age-discrimination case.

For its part, Medcor's analysis on this issue falters because it evaluates the ADEA claim against Kelley's other *counterclaims*. R2. Medcor Br. at 5–8; R1. 113, Medcor Resp. to Kelley Mot. to Amend at 7–9. Medcor argues that Kelley's ADEA claim is a compulsory counterclaim because it arises from the same transaction as Kelley's breach of contract *counterclaims*. *Id*. That is true. But that does *not* make the ADEA claim a compulsory counterclaim to Medcor's *trade-secrets* claims. Put another way, Kelley's ADEA complaint focuses on events leading up to and resulting from his termination, like replacing Kelley with a younger, more inexperienced employee. R2. 2024 Compl. ¶¶ 17, 25–26. Medcor's complaint against Kelley, in contrast, arises from events that happened several months after Kelley's termination and had little to do with Medcor and everything to do with Kelley's employment with Encore Safety Group. R1. 2023 Compl. ¶¶ 53–74. Though Kelley's ADEA claim is not a compulsory counterclaim, its close relation to the counterclaims filed in the 2023 case create, as explained next, another procedural obstacle for Kelley.

### B. Claim Splitting

The problem with Kelley's ADEA claim is that it arises from the same events as his 2023 counterclaims, so his failure to assert the age-discrimination claim with the counterclaims dooms the 2024 complaint. The reason: Kelley engaged in improper claim splitting.

11

Claim splitting is a form of res judicata (that is, claim preclusion) that prevents a party from splitting claims arising out of the same events into two cases, whether those claims are brought through a complaint or a counterclaim. *Nalco Co. v. Chen*, 843 F.3d 670, 674 (7th Cir. 2016); *see also VitalGo, Inc. v. Kreg Therapeutics, Inc.*, 2017 WL 1163741, at *4 (N.D. Ill. Mar. 29, 2017). "A suit is duplicative if the claims, parties, and available relief do not significantly differ between the two actions." *Scholz v. United States*, 18 F.4th 941, 951 (7th Cir. 2021) (cleaned up). It is true, however, that the rule against claim splitting does not require all of the same elements as claim preclusion. Claim preclusion requires "(1) an identity of the parties in the two suits; (2) a final judgment on the merits in the first; and (3) an identity of the causes of action." *Barr v. Bd. of Trs. of W. Ill. Univ.*, 796 F.3d 837, 840 (7th Cir. 2015). But the rule against claim splitting only requires satisfaction of the first and third elements of claim preclusion, that is, identity of parties and identity of causes of action. *Scholz*, 18 F.4th at 952. A subsequent claim or lawsuit violates the claim-splitting rule even if the first case has not arrived at a final judgment on the merits. *Id.* (citing *Katz v. Gerardi*, 655 F.3d 1212, 1218 (10th Cir. 2011)). And on the definition of "identity between the causes of action," the test is if the "claims arise out of the same *operative facts* or the *same transaction*." *Scholz*, 18 F.4th at 952 (emphases added). If the later suit (and claim) arises from the same transaction or events underlying the previous suit (and claim), then the later case should be dismissed.

Applying those principles here, Kelley's ADEA claim arises from the same operative facts as his 2023 counterclaims, so the later suit must be dismissed. In the 2024 ADEA suit, Kelley alleges that despite being an "exemplary" employee, Medcor demoted and discharged him. R2. 1, 2024 Compl. ¶¶ 23–24. Kelley's replacement was 20 years younger than him, and his discharge was the product of "discrimination against older employees." *Id.* ¶ 26. Likewise, in the 2023 counterclaims, Kelley directly challenged the grounds for his termination, alleging that he his job performance was "excellent," R1. 12, Kelley Counterclaims ¶ 6, he met financial goals needed to earn bonuses, *id.* ¶ 23, yet Kelley was "terminated without cause," *id.* ¶ 14. The counterclaims also specifically alleged that, before firing Kelley, Medcor hired a "younger, personal friend" of a Medcor executive to take Kelley's position. *Id.* ¶ 10. The demotion of Kelley was based on his successor's personal friendship with the Medcor executive and based on age discrimination: "Kelley was demoted to Executive Director of U.S. Operations, *simply to* satisfy the whim of the aforementioned personal relationship, and *replace him with a younger individual* with zero experience that would warrant the same." *Id.* ¶ 11(emphasis added). Kelley outright accused Medcor of choosing to "go younger." *Id.* ¶ 12. Kelley also alleged that he was fired without cause in January 2023, even though his "younger replacement" had bungled client relationships. *Id.* ¶ 14. The counterclaims even explicitly alleged that Kelley had filed an EEOC charge for employment discrimination. *Id.* ¶ 13.

13

When comparing the 2024 ADEA claim with the 2023 counterclaims, there is little question that the age-discrimination claim arises out of the same operative facts as the counterclaims. Both arise out of the circumstances underlying Kelley's demotion and then firing, including Medcor's motivation for the demotion and firing. Both arise out of Kelley's job performance and whether he met financial goals to earn bonuses. And the counterclaims repeatedly referred to the installation of Kelley's successor as based on the successor's relative youth. Counterclaims ¶ 10 ("younger, personal friend"); *id.* ¶ 11 ("replace him with a younger individual"); *id.* ¶ 12 ("go younger"); *id.* ¶ 14 ("younger replacement"). All of these alleged facts would form the basis of an age claim as much as they would the counterclaims.

So bringing the ADEA claim in a separate lawsuit violates the rule against claim splitting. In moving to dismiss the 2024 ADEA case, Medcor correctly argued that Kelley "should have brought his ADEA claim in the [2023 Case]" because the facts in the two cases are the same and the recovery he seeks is the same. R2. Medcor Br. at 9–10. As explained below, Kelley should have moved much faster to add the ADEA claim to the counterclaims in the 2023 case. Or Kelley could have waited to file all of his employment-related claims—all of them—until he received a Notice of Right to Sue on his ADEA claim, rather than assert any counterclaims in the 2023 case without having yet exhausted the ADEA claim. The bottom line is that even though the ADEA claim is not a compulsory counterclaim to *Medcor*'s 2023 complaint, by asserting his *own* 2023 counterclaims, Kelley violated the rule against claim

14

splitting by then bringing the ADEA claim in a separate lawsuit. The 2024 case must be dismissed.

### C. Motion to Amend

Kelley asks, in the alternative, to now amend his 2023 counterclaims by adding the ADEA claim. R1. Kelley Mot. to Amend. Civil Rule 15(a)(2) instructs district courts to freely grant a request for leave to amend "when justice so requires." That rule generally results in granting a party leave "at least once when there is a potentially curable problem with the complaint or other pleading." *Bausch v. Stryker Corp.*, 630 F.3d 546, 562 (7th Cir. 2010). But district courts have broad discretion in deciding whether to allow an amendment, and amendments are disfavored when they involve "undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies, undue prejudice to the defendants, or where the amendment would be futile." *Arreola v. Godinez*, 546 F.3d 788, 796 (7th Cir. 2008). Generally speaking, the longer the delay the less likely leave to amend will be granted. *Johnson*, 641 F.3d at 872.

Kelley's motion to amend must be denied for undue delay and for the prejudice it would cause to Medcor and the fact witnesses who have been subjected to discovery. It is true that delay alone is usually not a reason to deny a motion to amend. But the delay at this point would cause substantial prejudice to Medcor and the already-deposed fact witnesses. Kelley filed the age-discrimination complaint just seven days (on June 7, 2024) before fact discovery closed (on June 12, 2024) in the 2023 case. *See*

15

R1. 05/30/2024 Order;[4] R2. 2024 Compl. Not surprisingly, Medcor did not depose witnesses with an ADEA claim in mind. *See* R2. Medcor Br. at 8; R1. Medcor Resp. to Kelley Mot. to Amend at 4–5. Kelley offers no reason to think that the parties engaged in discovery of the type taken in employment-discrimination cases, such as on comparators or the alleged "systematic pattern" of age discrimination, R2. 1, Compl. ¶ 26. So to allow an amendment now would require the re-opening of fact discovery and the re-taking of depositions.

What's more, Kelley's asserted reason for the delay in bringing the claim—"because he wanted to give the EEOC an opportunity to resolve the matter before bringing a lawsuit"—does not explain away the delay. On the front end, Kelley could have—but apparently did not—ask the EEOC to issue the Right to Sue Notice. *See* 29 C.F.R. § 1601.28(a). Worse, on the back end, because Kelley filed the EEOC charge on May 8, 2023, R2. 14-1, EEOC Compl., after a 60-day waiting period (that is, after July 7, 2023), he was free to file suit (or amend counterclaims) in the 2023 case, despite a lack of action by the EEOC, *see* 29 U.S.C. § 626(d)(1). As of July 7, 2023, he could move to add the ADEA claim to his 2023 counterclaims. Instead, he waited *11 more months* (till June 7, 2024) to file the separate ADEA lawsuit. And he waited until the parties had expended time and resources on discovery and depositions in the 2023 case, which would have to be re-opened. Kelley otherwise offers no

---

[4]There was one deposition that had to be reconvened and finished by July 19, 2024. R1. 96.

other explanation for why he waited so long to assert the age-discrimination claim. Kelley's request to amend the counterclaims is denied.

## IV. Conclusion

Medcor's motion to dismiss Kelley's 2024 complaint, R2. 10, is granted. The dismissal is with prejudice because it violates the rule against claim-splitting. Kelley's motion to amend his counterclaims, R1. 111, is denied.

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: September 8, 2025